[No. 6631. Decided July 15, 1907.]

THE STATE OF WASHINGTON, *Respondent*, v. AL. MORAN, *Appellant*, THOMAS MORAN *et al.*, *Defendants.*[1]

STATUTES—TITLES AND SUBJECTS OF ACTS—INTOXICATING LIQUORS. Laws 1903, p. 31 (3 Bal. Code, § 2944a), entitled an act providing for the search and seizure of liquors kept or used contrary to law, and the punishment as misdemeanors of all violaters thereof, does not violate Const. art. 2, § 19, providing that no bill shall embrace more than one subject; and the title is broad enough to include provisions making it a misdemeanor to keep or maintain a place where liquors are kept or sold contrary to law.

INTOXICATING LIQUORS — OFFENSES — LIQUORS PROHIBITED. In a prosecution for keeping a room for the sale of intoxicating liquors contrary to law, it is not error to instruct that beer is an intoxicating liquor.

CRIMINAL LAW—TRIAL—VERDICT—MISTAKE. Where it is evident from the verdict that the jury has made a mistake in the name of the only defendant found guilty, it is not error to require the three defendants to stand up and be identified.

[1]Reported in 90 Pac. 1044.

Appeal from a judgment of the superior court for What-
com county, Neterer, J., entered October 17, 1906, upon a
trial and conviction of the crime of maintaining a nuisance
in selling intoxicating liquors without a license. Affirmed.

*Healy & Slentz* and *J. J. Noethe,* for appellant.
*Virgil Peringer* and *George Livesey,* for respondent.

Root, J.—Appellant herein was charged and convicted
upon an information filed under 3 Bal. Code, § 2944a (Laws
1903, page 31). Prior to the trial, a motion to quash the
information was interposed, as was also a demurrer, and both
were denied. Judgment was rendered upon a verdict of
guilty, and from such judgment this appeal is prosecuted.

The main contention of appellant is that the statute in
question is unconstitutional as being in conflict with § 19,
art. 2, of the state constitution, which reads: "No bill shall
embrace more than one subject, and that shall be expressed
in the title." The title of the act here involved is as follows:

"An act providing for the search for and seizure of liquors
received, kept, or used, contrary to law and the appliances
used in connection therewith and to define and punish as mis-
demeanors all violators thereof, and vesting all magistrates
with authority to receive complaints and issue warrants against
all persons violating the provisions of this act."

The first three sections of the statute read as follows:

"Sec. 1. That every person who shall, directly or in-
directly, keep or maintain, by himself or by associating or
combining with others or who shall in any manner aid, assist
or abet in keeping or maintaining any room or rooms, place
or places in which intoxicating liquors are received or kept for
unlawful use, barter or sale or for unlawful distribution; and
every person who shall receive, barter, sell, assist or abet an-
other in receiving, bartering or selling any intoxicating liquor
so received or kept, shall be guilty of a misdemeanor, and upon
conviction thereof shall be punished as hereinafter provided.

"Sec. 2. The keeping or maintaining of any place in which
intoxicating liquors are sold or given away, contrary to law,
or in which such liquors are kept or harbored for the evident

purpose of selling or giving away said liquors contrary to law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors or where intoxicating liquors are kept for the purpose of inducing people to resort, to buy or receive intoxicating liquors in violation of law is hereby declared to be a common nuisance. Upon complaint being made of the violation of this section a magistrate shall issue a search warrant in which the premises in question shall be particularly described, commanding the sheriff or constable to thoroughly search the premises in question and to seize and hold all intoxicating liquors, vessels, bar fixtures, screens, bottles, glasses, jugs and other appurtenances found therein adapted to be used in retailing, giving away or distributing liquors in violation of law, to make a complete inventory thereof and deposit the same with the magistrate.

"Sec. 3. The property seized under the warrant shall remain in the custody of the officer until the case has been decided by the court; if the defendant is found guilty the property seized shall be destroyed by the officer under the direction of the magistrate."

The information charged appellant and two others with "the crime of maintaining a nuisance in selling intoxicating liquors without a license, committed as follows." Then followed a description of certain premises which, it was alleged, the defendants kept and maintained, and in which "said room, place and building or buildings, intoxicating liquors were received and kept, for unlawful use, barter and sale, and for unlawful distribution," and that they there kept the room, place or building "in which intoxicating liquors were sold and given away, contrary to the law, and in which said intoxicating liquors were kept and harbored for the purpose of selling and giving away, contrary to law, and where persons were permitted to resort for the purpose of drinking intoxicating liquors, and where intoxicating liquors were kept for the purpose of inducing people to buy and receive intoxicating liquors, in violation of law," and said defendants did then and there "sell and barter intoxicating liquors, thereby maintaining a common nuisance, contrary to § 2944a, . . . no license having been issued to said defendants."

The evident purpose of the constitutional provision invoked was to prevent the legislature from placing in a bill matters of which the title gave no intimation, and to discountenance the joining in one act of incongruous matters. Speaking of a constitutional provision of this character, Cooley on Constitutional Limitations (7th ed.), pp. 205-6, says:

"The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible. . . . The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection."

In the case of *Seymour v. Tacoma*, 6 Wash. 138, 32 Pac. 1077, this court said:

"As the constitution has not indicated the degree of particularity necessary to express in its title the subject of an act, the courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that the double subject was not fully expressed in the title;" citing *Montclair v. Ramsdell*, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431.

In the case of *State v. Hall*, 24 Wash. 255, 64 Pac. 153, the following expression was given:

"The general rule is that if the matters embraced in a statute have congruity, or are naturally connected with each other, or are cognate and germane to each other, the statute does not embrace more than one subject and in determining these questions the constitution must not be so narrowly construed as to unnecessarily hamper or cripple legislation. It is also a general rule, applicable particularly in construing stat-

utes with reference to their titles, that statutes must be held constitutional unless they are clearly void."

Similar expressions are found in the case of *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817, and in *Marston v. Humes*, 3 Wash. 267, 28 Pac. 520. In the latter, the court said, with reference to this identical constitutional provision:

"How shall this provision be interpreted? What shall the word 'subject,' as used therein, be held to mean? Courts are bound to give such an interpretation to this provision as will make it reasonable and at the same time give it full force. . . I am of the opinion that the legislature must be the judge of the scope which they will give to the word 'subject,' and that so long as the title embraces but one subject it is not inimical to such constitutional provision, even although the subject as thus used contains any number of sub-subjects."

Applying the principles thus announced to the case at bar, we do not think the statute in question should be held invalid. The title of the act may not be skillfully drawn and the substance of the act may at first glance appear not to be confined to one subject-matter; but we do not think that there is such an incongruity between the different matters dealt with or such a defect in the title as to render the statute obnoxious to the constitution.

It is also urged that the court erred in giving the following instruction:

"It is not necessary that the state prove that any liquor was sold, it is sufficient if the state prove beyond a reasonable doubt that the defendants or either of them, maintained a place in which intoxicating liquors were sold or given away, or where intoxicating liquors were harbored for the evident purpose of selling and giving away said liquors, contrary to law, or where persons were permitted to resort for the purpose of drinking intoxicating liquors."

Taking into consideration the other instructions given, we do not think the giving of this was error.

It is also urged that the court was in error in instructing the jury that beer is an intoxicating liquor. We think this contention has no merit.

The jury returned a verdict of not guilty as to two of the defendants, and a verdict of guilty as to one. When the verdicts were first returned, it seems to have been apparent that an error was made in the name of the defendant sought by the jury to be returned as guilty. The defendants were required to stand up and be identified, and the jury was asked to, and did, retire. The record is not very complete as to just what transpired. We can find nothing in the action of the court that infringed any substantial right of the defendant.

The judgment of the superior court is affirmed.

HADLEY, C. J., MOUNT, FULLERTON, and CROW, JJ., concur.